DECISION
This matter is before the Court on Kent County Memorial Hospital's ("KCMH") appeal of the Department of Health's ("DOH") decision to grant a Certificate of Need ("CON") to Bayside Endoscopy Center, LLC ("Bayside"), which permits Bayside to open two rooms for endoscopy procedures beginning in January, 2006. KCMH alleges that in granting the CON, the DOH exceeded its statutory authority by considering Rhode Island's future need, as opposed to its current need, for endoscopy procedures, that the DOH's decision is plagued with procedural and legal errors, and that the record lacks substantial evidence to support the decision. For the reasons set forth below, however, the DOH's decision is affirmed.
 Introduction
Before addressing KCMH's arguments on appeal, a brief synopsis of the DOH's procedure for reviewing CON applications is useful.[1] The process begins when an application for a CON is filed with the DOH. The applicant or other interested parties may present evidence, and the DOH may hold hearings on the matter. As the Supreme Court of Rhode Island articulated inJohnston Ambulatory Surgical Associates, Ltd. v. Nolan,755 A.2d 799 (R.I. 2000):
 "Section 10.3 (b) of the CON regulations does provide that a hearing officer shall conduct hearings, but the hearing officer acts only in a ministerial capacity and is not involved in the council's determination of its recommendation or the director's review of the council's recommendation." Id. at 806-07 n. 2.
The hearing officer compiles a record of the proceedings, along with all of the exhibits and forwards the record to the Health Services Council ("HSC").[2] Id. at 806. The HSC examines the materials and provides the DOH with a written report containing its findings and recommendations. The DOH then reviews the record and the HSC's recommendations and renders its decision. The DOH may approve or disapprove the CON application, in whole or in part, but is required, pursuant to CON Regulation 13.9, to issue written findings supporting its decision. Further, CON Regulation 13.8 requires that if the DOH "renders a decision contrary to the findings and recommendations of the Health Service Council, it must afford written justification for its variance therefrom." Copies of the DOH's final decision are thereafter provided to the parties.
Within 30 days of the decision, any person who is affected by the agency's decision may request the agency to reconsider the application. (CON Reg. 16.2). To be entitled to reconsideration, one must satisfy CON Regulation 16.1 (a), which provides:
 "Any affected person may request in writing reconsideration of the state agency's decision if such person:
 1) presents significant relevant information not previously considered by the state agency;
 2) demonstrates that there have been significant changes in factors or circumstances relied upon by the agency in reaching its decision;
 3) demonstrates that the agency has materially failed to follow its adopted procedures in reaching its decision; or
 4) provides such other basis as the state agency determines constitutes good cause, which basis may be determined on a case by case basis."
If the DOH decides reconsideration is warranted, notice is again sent to all affected parties, and additional public hearings are held before an adjudicatory hearing officer. (CON Reg. 16.3, 16.4). Thereafter, within 45 days of the conclusion of the reconsideration public meeting, the DOH shall make written findings which state the basis for its decision on the request for reconsideration. (CON Regulation 16.7).
The Decision of Reconsideration may then be appealed administratively for review in accordance with Section 17 of the CON Regulations.[3] "The decision of the administrative agency . . . shall be based solely on the evidence introduced in the record before the state agency and facts officially noticed." (CON Reg. 17.6). The decision of the DOH, on administrative review, is treated as the final decision, unless judicial review is sought in accordance with CON Regulation 18.0. (CON Reg. 17.13).
 Facts and Travel
On January 12, 2004, Bayside filed a CON application with the DOH to establish in East Greenwich, Rhode Island a freestanding ambulatory surgical center, in which there would be two rooms for endoscopy services. Bayside subsequently amended its CON application and submitted that version to the DOH on February 3, 2004.[4] KCMH formally objected to the amended application and requested a public meeting. Accordingly, a hearing officer was designated who, pursuant to CON Regulation 10.3 (c), conducted public meetings on March 25, April 14, May 26, June 10, and July 20, 2004. At these meetings both KCMH and Bayside presented exhibits and witnesses.[5] KCMH asserted that there was not a current need for endoscopy rooms while Bayside presented evidence demonstrating that there would be a future need for such rooms, specifically in 2006. Furthermore, in July 2004, Harvey Zimmerman, the DOH's expert witness, submitted a report that provided data and analysis of the need for endoscopy and operating rooms in Rhode Island, both currently and projected. The exhibits and the transcripts were incorporated into the record and forwarded to the Project Review Committee ("PRC"), which held its first meeting on August 5, 2004.
On August 13, 2004, between the first and second PRC meeting, Zimmerman submitted a two-page supplemental memorandum to his July 2004 report. After receiving the memorandum, Bayside telephoned counsel for the DOH to voice its objection to the memo. Both Bayside and the DOH assert that the DOH responded simply by informing Bayside that the matter would be discussed at the August 19, 2004 PRC meeting. (Bayside's Brief at 11; DOH's Reply Brief at 14). KCMH, however, was not made a part of this telephone conversation. Thereafter, when the PRC met, counsel for the DOH instructed the PRC members not to consider the supplemental memo as part of the record because Zimmerman was unavailable to testify as to its contents.[6] After the August 19, 2004 meeting, the PRC voted to recommend approval of Bayside's CON.
The full HSC then met on August 31, 2004, and accepted the PRC's recommendation. The HSC, however, suggested that approval of the CON be subject to the requirement that the facility not open until January 1, 2006. (HSC Rpt. at 15). Thereafter, on September 7, 2004, the DOH issued a decision affirming the HSC's recommendations and granted Bayside's CON. The DOH imposed several restrictions on the CON's approval, including the condition that the facility not open until January 1, 2006.
Dissatisfied with the DOH's decision, on October 7, 2004, KCMH made a Request for Reconsideration of the September 7, 2004 decision, pursuant to G.L. 1956 § 23-15-6 (b) (9). Bayside objected to this request on October 12, 2004. In its decision dated October 29, 2004, the DOH denied reconsideration of the grant of the CON. Subsequently, in accordance with CON Regulation 17.1 et seq., KCMH sought further review of the DOH decision. This review was granted; however, the Administrator of Adjudication, in a decision dated March 30, 2005, affirmed the decision granting the CON. KCMH, on April 25, 2005, filed a timely appeal to this Court.
 Standard of Review
The Superior Court's judicial review of a DOH decision on appeal is governed by the Administrative Procedures Act ("APA"), G.L. 1956 § 42-35-15 (g), which provides:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
Under the terms of this statute, the reviewing court is precluded from substituting its judgment on questions of fact for that of the agency. Lemoine v. Dep't of Public Health, 113 R.I. 285,291, 320 A.2d 611, 614-15 (1974). This is true even in those cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v. Dep't of Employment Sec.,414 A.2d 480, 482 (R.I. 1980). The court's review is limited to determining whether legally competent evidence exists to support the decision. Barrington Sch. Comm. v. Rhode Island State LaborRelations Bd., 608 A.2d 1126, 1138 (R.I. 1992). Legally competent evidence is "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance."Center For Behavioral Health, Rhode Island, Inc. v. Barros,710 A.2d 680, 684 (R.I. 1998) (quoting Newport Shipyard, Inc. v.Rhode Island Comm'n for Human Rights, 484 A.2d 893, 897 (R.I. 1984)). If there is any such evidence, the court is required to uphold the agency's factual determinations. Barrington Sch.Comm., 608 A.2d at 1138. However, agency decisions on questions of law are not binding upon the court and may be reviewed to determine the law and its applicability to the facts.Narragansett Wire Co. v. Norberg, 118 R.I. 596, 607,376 A.2d 1, 6 (1977).
Special rules of deference take effect, though, when the agency decision is the product of a two-tier agency review. In certain circumstances the Supreme Court has held that the agency, in rendering its final decision, is required to give deference to the findings of the hearing officer at the initial level.[7] See Environmental Scientific Corp. v. Durfee,621 A.2d 200, 207-08 (R.I. 1993). Therefore, the Court on review should also give the appropriate deference. Id. However, the two-tier process of agency review within the DOH has been distinguished. The Supreme Court has held that when rendering its final decision, the DOH does not have to afford deference to the recommendation of the HSC. Johnston Ambulatory SurgicalAssociates, Ltd. v. Nolan, 755 A.2d 799, 806-07 (R.I. 2000).[8] Consequently, while the Superior Court, on review, must give deference to the final agency decision, no deference is owed to the HSC's initial recommendation.[9]
 Analysis A. Future Need
KCMH first argues that the DOH exceeded its statutory authority by considering future need when it approved Bayside's CON application. According to KCMH, the DOH is limited to examining evidence of whether there is a current public need for the requested service. In response, the DOH claims that it did not act in excess of its statutory authority by considering future need. The DOH made its position clear in its October 29, 2004, Decision for Reconsideration, wherein it expressly instructed:
 "RIGL 23-15 provides a broad sweep of jurisdiction with respect to New Institutional Health Services. A number of applications have been approved and considered by the Department where the actual opening or operational function of the facility is scheduled at a future date. RIGL 23-15-4 (g) gives the state agency broad authority to impose conditions on the grant of a Certificate of Need. . . . Sensible and intelligent planning absolutely requires considerations involving projections into the future. . . . In short, the CON Statute anticipates that circumstances may exist in the future which require intelligent health planning and the grant of CON applications that would be appropriate to meet a currently projected need which would be operational at a future date." (Decision for Reconsideration at 5).
Upon review, careful not to substitute its judgment on findings of fact for that of the agency, the Court finds that the DOH did not exceed its statutory authority by examining future need for endoscopy facilities when deciding to grant Bayside's CON.
It is axiomatic that in order to determine whether the DOH exceeded its statutory authority to grant CONs, it is necessary to examine the applicable statutes that regulate the DOH's authority over the practice. Through enactment of § 23-15-4, the Legislature has granted the DOH with the authority to issue CONs. This authority is limited, as "No approval shall be made without an adequate demonstration of need by the applicant at the time and place and under the circumstances proposed, nor shall the approval be made without a determination that a proposal for which need has been demonstrated is also affordable by the people of the state." § 23-15-4 (b). However, the Legislature also granted the DOH broad authority to impose its own conditions on CON approval. The DOH is vested with the authority to "promulgate appropriate rules and regulations that may be designed to further the accomplishment of the purposes of this chapter including the formulation of procedures that may be particularly necessary for the conduct of reviews of particular types of new institutional health services. . . ." § 23-15-6. Section 23-15-4 (g) also subjects CON approval to conditions placed by the DOH, providing that,
 "[a]pproval of new institutional health care equipment by the state agency shall be subject to conditions that may be prescribed by rules and regulations developed by the state agency with the advice of the health services council, but those conditions must relate to the considerations enumerated in subsection (e) and to considerations that may be established in regulations in accordance with subsection (e) (14)."
Pursuant to this authority, the DOH has established a number of regulations "for the purpose of establishing minimum standards and procedures regarding the determination of need for the development of new health care equipment and new institutional health services." (CON Regs., Introduction) One section that is of particular importance is CON Regulation 9.11. That section sets forth an extensive list of factors the HSC may consider when reviewing CON applications. While this list is indeed thorough, it is not exhaustive, as CON Regulation 9.11 (x) permits examination of "any other factors deemed relevant by the Health Services Council or the Director." Through these sections and statutes, the Court finds that the DOH did not exceed its statutory authority by considering future need when reviewing Bayside's CON application.
CON Regulation 9.11 (x) makes clear that the DOH can take into consideration many factors when deciding whether to approve a CON application. The issue becomes, therefore, whether there is anything specifically in the statutes which prohibits the DOH from considering future need when making CON determinations. After review of the applicable statutes, there is no clear language that specifically denies the DOH the authority to consider future need.[10] Therefore, statutory construction is required to determine if the Legislature intended to confine the DOH's review to current need without expressly stating such. In engaging in such construction, the Court is mindful that "where the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by the agency charged with its enforcement is entitled to weight and deference as long as the construction is not clearly erroneous or unauthorized." Gallison v. Bristol Sch. Comm., 493 A.2d 164,166 (R.I. 1985). "[A]n agency's construction of its own regulations is entitled to substantial deference." Martin v.Occupational Safety and Health Review Comm'n, 499 U.S. 144, 150
(1991). See also Pawtucket Power Assocs. Ltd. P'ship v. Cityof Pawtucket, 622 A.2d 452, 456 (R.I. 1993) (". . . deference will be accorded to an administrative agency when it interprets a statute whose administration and enforcement have been entrusted to the agency . . . even when the agency's interpretation is not the only permissible interpretation that could be applied.").
Here the DOH has interpreted its governing statutes and its own regulations to allow consideration of future need when reviewing CON applications. CON Regulation 9.11 permits the HSC to consider any factor the Council or the Director deem relevant, and it is clear that the Director specifically found future need to be relevant. The DOH stated that "Sensible and intelligent planning absolutely requires considerations involving projections in the future." (Decision for Reconsideration at 5). Moreover, the DOH held: "The CON statute anticipates that circumstances may exist in the future which will require intelligent health planning and the grant of CON applications that would be appropriate to meet currently projected need which would be operational at a future date." Id. The DOH recognized the issue of future need and interpreted the statutes in a manner which allows future need to fall within the scope of 9.11 (x) as a permissible consideration when ruling on CON applications. As there is no specific language within the statutes and regulations that prohibit the DOH from considering future need, this Court finds that the DOH did not act beyond its statutory authority.
Furthermore, the DOH's CON Rules and Regulations also indicated that future need may be analyzed when determining whether to grant a CON. Again, at issue is the scope of "need." The DOH defines public need as "a substantial or obvious community need for the specific new health care equipment or new institutional health service proposed and the scope thereof, in light of the attendant circumstances and in the context of the considerations outlined in sections 4.3 (d) and 9.11 herein." (CON Reg. 3.20) As indicated above, Section 9.11 (x) permits consideration of any factor the Director or HSC may deem relevant, and it is apparent that the DOH considers future need relevant to CON determinations. The considerations in Section 4.3 (d) also demonstrate that the DOH intends future need to be a reviewable factor. Section 4.3 (d) provides in part:
 "In demonstrating public need, the applicant shall, as a minimum, perform the following:
 1) demonstrate the current service and target population involved and where appropriate, the projected population changes;
 2) delineate the health needs of the above populations;
 3) inventory the facilities or services currently available or proposed capable of meeting the types of health needs identified in (2) above . . ."
 (Emphasis added.)
By using the language "proposed" and "projected," the DOH exhibited its intention to examine future events and conditions; otherwise, there would be no purpose in requiring applicants for CONs to include such forward-looking data. Subsection 4.3 (d) (2) requires that when reviewing CON applications, the DOH should consider the health needs of the projected population — in other words, future health needs.
This Court has not been made aware of any provision that clearly prohibits the DOH from considering the future health needs of the public when deciding whether to issue a CON. Pursuant to Gallison and Martin, therefore, the Court should afford considerable deference to the DOH's interpretation of its enabling statutes and its regulations, and the Court should uphold those interpretations unless they are clearly erroneous. The DOH's interpretation of its governing statute that future need may be a factor for consideration is reasonable, warranting this Court's deference. Thus, because the consideration of future need was not a clear error of law or in excess of the DOH's statutory authority, the DOH's decision cannot be overturned on that ground.
 B. Ex Parte Communication
KCMH next argues that it was an error of law for the DOH to engage in ex parte communication with counsel for Bayside. As a result of this error, KCMH asserts that the DOH's decision was "tainted." The DOH, on the contrary, contends that the ex parte communication was not prohibitive ex parte communication and that reversal of the agency's decision on this ground is unjustified.
The ex parte communication at issue involves the August 19, 2004 telephone conversation between counsel for Bayside and counsel for the DOH, regarding Zimmerman's August 13, 2004 memo. According to Bayside, when it received the memorandum, it telephoned the DOH's counsel to indicate that it would object to the document being placed on the record. The DOH responded by informing Bayside that the issue would be addressed that afternoon during the scheduled public meeting. The DOH contends that there is no assertion that the merits of the memoranda were discussed; rather, the Department simply gave notice to Bayside that the subject matter of the objection would occur at that afternoon's meeting.
For this Court to find that the ex parte communication was a clear error of law that prejudiced KCMH's substantial rights, examination of the applicable CON Regulations pertaining to ex parte communication is necessary. "Ex parte contact" is defined as "an oral or written communication not on the public record, with respect to which reasonable prior notice to all parties is not given, not including requests for status reports on reviews being conducted." (CON Reg. 3.24). DOH regulations prohibit ex parte communications, particularly CON Regulation 10.3 (e), which provides:
 "After the commencement of a public meeting held during the course of review and before a decision is rendered, there shall be no ex parte contacts between (i) any person acting on behalf of the applicant or holder of an approval from the state agency, or any person opposed to the issuance or in favor of withdrawal of an approval, and (ii) any person in the state agency who exercises any responsibility respecting the application or withdrawal."
Once again, this Court must be mindful that "an agency's construction of its own regulation is entitled to substantial deference." Lyng v. Payne, 476 U.S. 926, 939 (1986). Therefore, the Court must give appropriate deference to what behavior the DOH considers to fall under CON Regulation 3.24's definition of "ex parte contacts." In regards to this issue, the DOH has asserted that "Section 3.24 caries within it the concept of `reasonableness.'" (Decision for Reconsideration at 3). According to the DOH, reasonable notice must be given for oral or written communications not on the public record (CON Reg. 3.24); as this conversation was simply the DOH telling Bayside that the merits of its objection to the memo would take place at the afternoon meeting, reasonable notice was not warranted given the insubstantial nature of the contact.[11]
Courts have concluded that not all ex parte communication requires reversal of an agency decision. See NarragansettElectric Co. v. Burker, 122 R.I. 13, 404 A.2d 821 (1979) (Ex parte contact does not necessarily mean that agency decision is void. The Supreme Court of Rhode Island stated that "Although violations of the ex parte prohibition in other factual contexts have led courts to void the agency order or decision, we choose to follow contrary precedent in a ratemaking setting . . . [citations omitted].") 122 R.I. at 22, 404 A.2d at 827; LaPradev. Coastal Resources Management Council, 1996 R.I. Super. LEXIS 71, *10-*12 (1996).[12] The DOH argues that the type of communication here was not the type of contact that was intended to be prohibited by CON Regulation 10.3 (e). It reasoned: "This communication and contact does not bear a resemblance to either the letter or the spirit of prohibitive ex parte contacts designed to influence the decision of fact finders to the exclusion of the participation, notice or influence of affected parties." Id. As all ex parte contact does not warrant reversal of an agency decision and as the DOH's interpretation is not clearly erroneous, this Court should defer to the DOH's interpretation of prohibited ex parte contact.
Furthermore, even if this Court were to find that the DOH's interpretation is clearly erroneous and that the telephone conversation between Bayside and the DOH was a prohibited ex parte communication, this specific contact did not prejudice KCMH's substantial rights, which would be necessary for this Court to reverse the agency's final decision. Section 42-35-15
(g) allows the court to remand the case for further proceedings, or reverse or modify the agency decision, only if substantialrights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions meet one of the six criteria listed in that section. Based upon the nature of the ex parte communication here, even if it were an error of law for the DOH to engage in such behavior, the Court cannot find that substantial rights of KCMH have been prejudiced. The DOH asserts that the only thing that it told to Bayside during its ex parte communication was that the issue of the admissibility of Zimmerman's August 13 memo would be discussed at the public hearing. There was no communication regarding the substance of the memo or what the DOH was going to consider in rendering its decision. Bayside was simply given notice of what topic would be addressed at the meeting, nothing more. This in no way affected the outcome of the hearing or the agency's decision on whether to allow Zimmerman's memo into the record. As the ex parte communication had no real effect on the matter, it cannot be said that substantial rights of KCMH have been prejudiced. Therefore, whether or not the DOH abused its discretion in engaging in the ex parte telephone conversation, substantial rights of KCMH have not been prejudiced,[13]
and pursuant to § 42-35-15, the decision should not be reversed.
 C. Women and Infants Hospital's Survey Report
KCMH next argues that the DOH failed to consider corrected data provided by Women Infants Hospital ("WI"). In light of this information, KCMH asserts that the DOH's decision is clearly erroneous in view of the reliable, probative, and substantial evidence on the record. However, this Court finds that the DOH's decision is not clearly erroneous, as substantial evidence exists to support its decision and KCMH's substantial rights have not been prejudiced.
On August 27, 2004, after the PRC had met but prior to the full meeting of the HSC, WI submitted a corrected survey report to Zimmerman's questionnaire, indicating that as of August 2003 WI had opened one additional endoscopy room, giving it a total of two endoscopy rooms available. KCMH's position is that this corrected information was erroneously ignored by the full HSC. KCMH argues that this information indicates that there are 48 endoscopy rooms available in Rhode Island and not 47, as reported by Zimmerman. Zimmerman also projected that Rhode Island would have a need for 49 endoscopy rooms in 2006. Therefore, if there are 48 rooms currently available and not 47, KCMH contends that the granting of a CON for two rooms was clearly erroneous.
Contrary to KCMH's assertions, this Court finds that WI's corrected report was considered by the full HSC and that substantial evidence on the record supports the DOH's decision. In its October 29, 2004 Decision, the DOH found:
 "The Women Infants' corrected survey was part of the package of material which went to the Full HSC members on 27 August 2004 for the Full HSC to consider the Bayside application on 31 August 2004 with a weekend intervening. Therefore, the corrected survey report was information that the Full HSC had in its possession and was the subject of its consideration at the time it voted to recommend approval of Bayside's application. In no way was this corrected survey significant relevant information not previously considered by the state agency." (Decision for Reconsideration at 4).
Furthermore, Zimmerman even referenced WI's corrected information in his report, writing that "Women and Infants Hospital reports that one additional endoscopy room was opened in August 2003. This room is reported as available for the full year beginning in 2004." Thus, the full HSC had knowledge of the corrected data when it rendered its decision.
More importantly, the record indicates that KCMH may have incorrectly interpreted the data and that there are only 47 endoscopy rooms, including the additional room at WI. Zimmerman specifically testified that it was the additional WI's endoscopy room that increased the number of rooms from 46 to 47. When posed with the question, "And in 2004, there's 47 as a result of the new one from Women and Infants," Zimmerman responded by stating, "Right, yes." (Tr. 7/20/04 at 24). Zimmerman's Report also suggests that there were only 47 rooms projected to be available in 2004, including the additional room at WI. Table 1 of the Zimmerman Report shows that there were 46 endoscopy rooms available in 2003. This was based on data Zimmerman had collected reflecting actual numbers up until 2003. However, the numbers provided for 2004 and beyond were merely projections. Curiously though, the reported supply of endoscopy rooms jumps from 46 to 47. Without any further surveys reported, other than WI's corrected survey, it appears that the extra room listed in 2004 (and beyond) is indeed the room reported by WI, as was specifically testified to by Zimmerman. If there were 47 rooms as written in the Zimmerman report, then the DOH was clearly not erroneous in granting a CON for two additional rooms to meet the projected need for 49 rooms.[14]
Even if KCMH were correct in its interpretation of the data that there are 48 endoscopy rooms available in Rhode Island, the DOH's decision to grant a CON is still not against the probative evidence in the record. CON Regulation 9.11 (x) provides that in determining whether a need for a health service exists, the HSC may consider any factor that it or the Director deems relevant. In this matter, the HSC found that not only were the number of endoscopy rooms a relevant consideration for the particular CON application at hand, but so too were the number of operating rooms available in Rhode Island. The HSC found that "because endoscopies can be (and are) done in other operating rooms or special procedure rooms, it is appropriate to consider the overall need for operating rooms in the state." (HSC Report at 6). Table 3 of Zimmerman's Report projects that in 2006 there will be a projected deficit of three endoscopy rooms and operating rooms.[15] If the endoscopy and operating rooms are combined together, there is clearly evidence in the record to support the DOH's decision to grant a CON for only two
endoscopy rooms. As the HSC reported (and was later adopted by the DOH), "There is no projected excess capacity of surgical operating rooms that could be used for endoscopies. A deficit of operating rooms is projected in the near future, and this additional need is most apparent for endoscopy rooms." Id. at 8.
The DOH further took into consideration the fact that it would take approximately six months to construct a facility to supply additional endoscopy rooms. Id. at 10. Again, pursuant to CON Reg. 9.11 (x), the agency may consider any factor that it deems relevant. It is apparent that future planning and the time required to establish new facilities to perform endoscopies were deemed relevant factors by the DOH in determining whether to issue a CON. In this case, the time required to create endoscopy facilities is evidence which supports the agency's decision. Proper planning supports the DOH's presently granting the CON, rather than waiting until there is a substantial need, as the need could not be rectified until construction was complete. In other words, the agency decided that it was best to take preventative measures to meet the need instead of waiting to begin construction until after the need arose.[16] Thus, even if the corrected WI's report were not considered, other grounds support the DOH's decision.
The Court shall not substitute its judgment for the DOH's findings of fact. There is insufficient evidence of record for this Court to hold that the DOH's finding that "the applicant has adequately demonstrated the need for the proposal at the time, place and circumstances proposed" was clearly erroneous.
 D. Zimmerman's Memorandum
On August 13, 2004, Zimmerman submitted a memorandum to the DOH as a supplement to his July 2004 Report, which was distributed to the PRC. When the PRC met on August 19, 2004, however, members were advised by DOH counsel that the memo was not permitted as part of the record. The DOH, pursuant to CON regulation 10.3, excluded the memo from the record because Zimmerman was unavailable to testify as to its contents. CON Regulation 10.3 (c) provides:
 "Any person shall have the right to be represented by counsel and to present oral or written arguments and evidence relevant to the matter which is the subject of the public meeting. Any person affected by the matter may conduct reasonable questioning of persons who make relevant factual allegations." Here, Zimmerman was unavailable for examination. Consequently, any party affected by the factual assertions made in his memoranda would be denied his or her right under CON Regulation 10.3 (c) to confront Zimmerman on his factual allegations. Thus, the DOH prohibited the memo from becoming part of the record.
KCMH claims that excluding the memorandum was a clear error of law. According to KCMH, the public meetings pertaining to the CON application were not contested hearings, and therefore, the rules of hearsay are not applicable. Further, KCMH asserts that the DOH has considered other documents where the authors were unavailable to testify. As other documents were admitted to the record without the author's testimony, KCMH takes the position that it was arbitrary to exclude only Zimmerman's memo on the grounds that he was unable to testify to its contents.
While KCMH is correct in its assertion that the hearsay rules applicable to a court proceeding do not apply to administrative hearings, the APA still limits what hearsay is admissible at such hearings.[17] The Supreme Court of the United States has held that at a hearing conducted under the APA, hearsay is "admissible up to the point of relevancy." Richardson v.Perales, 402 U.S. 389, 410 (1971). However, the decision on whether to allow hearsay evidence is also conditioned upon "the procedure's integrity and fundamental fairness." Id. The Court articulated:
 "We see nothing that works in derogation of that integrity and of that fairness in the admission of consultants' reports, subject as they are to being material and to the use of the subpoena and consequent cross-examination. This precisely fits the statutorily prescribed `cross-examination as may be required for a full and true disclosure of the facts.'" Id. Consequently, the DOH did not err when it excluded the Zimmerman memo (hearsay), because as the author was not subject to examination as to its contents, substantial due process rights would have been violated.
In the present matter, it appears that the DOH interpreted the language in CON Regulation 10.3 (c) ("Any person affected by the matter may conduct reasonable questioning of persons who make relevant factual allegations") to require examination of an author before the author's documents can be admitted as an exhibit. In other words, if the affected individual is unable to enforce his or her right to question an unavailable witness, the materials produced by that witness should be excluded from the record. The DOH could reasonably conclude that the "fundamental fairness" required in Richardson would be denied if the DOH were to allow Zimmerman's hearsay document into evidence without giving the opposing party the opportunity to question the author on the document's contents. As no statutory provision or rule delineates what should occur if an author of a document is unavailable to testify as to the documents contents, this Court should defer to the DOH's interpretation that in this case, such unavailability results in the exclusion of the document from evidence.
Even if the DOH did commit an error of law by excluding the Zimmerman memo as an exhibit, KCMH has failed to demonstrate that its substantial rights were prejudiced. According to its March 30, 2005 decision, the DOH has stated that while the memo was not admitted as an exhibit, the HSC did review it and had knowledge of its contents. (Decision 3/30/05 at 3-4). On August 31, 2004, counsel for KCMH orally argued to the full HSC to accept the contents of Zimmerman's memo. Therefore, the committee members had knowledge of the memoranda's substance. The DOH, though, failed to find that the information contained in the memo would affect the agency's decision. While the memo was considered, "[t]he Director found that the information contained in that memo was not significant enough or relevant enough to alter the agency's final decision." (Decision 3/30/05 at 6). Therefore, as the CON would have been granted even if the memo were introduced into the record as an exhibit, KCMH cannot show that it has suffered substantial prejudice to its rights by the DOH's decision to exclude the memorandum. Section 42-35-15 requires an appellant to demonstrate that his or her substantial rights have been prejudiced before a Court on review will reverse an agency decision; because KCMH has not adequately demonstrated how its substantial rights were prejudiced by exclusion of the memo, KCMH's request to reverse the DOH's decision on this ground is denied.
 E. Substantial Evidence
KCMH ultimately asserts that the DOH's decision to grant Bayside's CON should be reversed because it is not supported by the substantial evidence on the record. A Superior Court may reverse or remand an agency decision if the decision is "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." § 42-35-15 (g). However, unless an agency's decision is completely devoid of competent evidence on the record, it must be upheld. Great American Nursing Centers,Inc. v. Norberg, 567 A.2d 354, 357 (R.I. 1989). Even if the Court were to view the evidence differently than did the agency, the Court may not reverse the agency if substantial evidence exists to support the decision. Berberian, 414 A.2d at 482. Applying this limited scope of review, the Court here should hold that there is substantial evidence in the record to support the DOH's decision and therefore, the DOH's approval of Bayside's CON should be affirmed.
In approving Bayside's CON application, the DOH adopted the findings in the "Report of The Committee of The Health Services Council on The Application of Bayside Endoscopy Center, LLC D/B/A Bayside Endoscopy Center at Kent County, LLC For Development of A Freestanding Ambulatory Surgery Center" that was adopted by the HSC on August 31, 2004. The PRC, when preparing this report, heard testimony from several experts and had before it numerous documents discussing the need for additional endoscopy rooms in Rhode Island. For example, Zimmerman testified that the current excess of endoscopy rooms is rapidly disappearing and that in 2006 more rooms will be needed than will be available. (Tr. 7/20/04 at 9-10). This conclusion was also included in Table 1 of Zimmerman's Report, which indicates that in 2006 there will be 47 endoscopy rooms available, but there will be a need for 49 such rooms. Furthermore, Zimmerman projected that in 2006 there will be a combined need for three endoscopy and operating rooms, and that this need was only to get larger as time goes by.[18]
(Amended Zimmerman Report Table 3).
The DOH also had evidence that Rhode Island has the sixth fastest growing rate of elderly population. (Tr. 7/20/04 at 29). Both Zimmerman and Philip Trupiano, M.D. testified that this rapidly aging population will increase the need for colorectal cancer screening. (Id., Tr. 3/25/04 at 22). Consequently, the rate of endoscopies will also increase. As Zimmerman testified:
 "Q: Your opinion is that the rate of endoscopies will continue into the future in your linear regression analysis, correct?
 A. That's correct.
 Q. At a rapid rate of growth, correct?
 A. Yes.
 Q. And that as of 2006, we are not going to have enough rooms to meet the need, correct?
 A. That's correct.
 Q. And on top of that we are going to have a shortage of operating rooms, correct?
 A. It is quite likely." (Tr. 7/20/04 at 35).
In addition to Zimmerman's testimony and report, Dr. Daniel Quirk testified that Kent County is "currently underserved for the provision of endoscopic services," signifying a need for additional rooms in that particular geographic area. (Tr. 3/25/04 at 7). Quirk further testified that there is a prolonged waiting time for endoscopic services. He stated that "At the present time, waiting can be as great as 14 weeks in that area. It tends to discourage patients from undergoing endoscopic procedure; and as a result, impacts on the number of patients being evaluated and subsequently treated." (Tr. 3/25/04 at 7-8).[19] The PRC also considered patients' traveling distance as a factor for consideration when determining if a need exists. The HSC took the time to state in its report that "The Committee took special note of the travel and distance considerations of patients seeking these services. . . ." (HSC Rpt. at 10).
Bayside further revealed in its closing argument that while the Zimmerman Report demonstrated a need for endoscopy rooms in 2006, there is even a greater need than the Report suggests. According to Bayside, "The Zimmerman report underestimates the need by using optimum efficiency of 2,000 cases per room. The applicant's need analysis indicates a need of 8,590 procedures and the two additional rooms would only be able to accommodate 4,000 procedures." (HSC Rpt. at 9). The DOH could have thus concluded that more rooms are needed than the two suggested in Zimmerman's Report.
KCMH argued that the data indicating a need for future endoscopy and colonoscopy rooms is skewed because it is based on patients having examinations every seven years, and according to KCMH, patients only need to have these examinations every ten years. In support of this contention, KCMH has cited to several sources, including the American Cancer Society ("ACS"), which recommend a screening rate of every ten years for colonoscopies. (See Tr. 3/25/04 at 31-35). KCMH maintains that if patients receive screening every ten years, then no need exists for additional colonoscopy facilities. In response, Bayside presented evidence supporting the use of a seven year screening standard. For instance, Michael Curtis, one of the individuals who assisted Bayside in preparing its CON application, testified that various groups have different recommendations. (Id. at 64). According to his testimony, the American College of Gastrointestinal Surgeons recommends screening every seven to ten years. Additionally, Bayside submitted an article by Dr. Glickman wherein 93% of the Rhode Island endoscopists and primary care physicians surveyed recommended colonoscopy testing to occur every seven to ten years. (Exhibit 6; Tr. 4/14/04 at 21-22). Thus, the HSC had evidence before it supporting the seven year standard, which when used, points toward a need for additional colonoscopy rooms.
The DOH's decision will be upheld if there is legally competent evidence on the record, which the Rhode Island Supreme Court has defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance."Foster-Glocester Reg'l Sch. Comm. v. Bd. of Review,854 A.2d 1008, 1012 (R.I. 2004) (quoting Center for Behavioral Health,Rhode Island, Inc. v. Barros, 710 A.2d 680, 684 (R.I. 1998)). This Court finds that the above evidence, which supports the DOH's decision to grant the CON, is more than a scintilla. While there may be evidence that goes against the DOH's decision, the DOH is not required to demonstrate to this Court on appeal thatall of the evidence supports its decision. In fact, this Court is required to give substantial deference to the DOH's interpretation of the evidence and its findings of fact. Furthermore, the DOH's final decision supports the initial recommendation of the HSC. The fact that the HSC and the DOH reached the same conclusion bolsters the strength of the DOH's decision, especially because the DOH need not give deference to the HSC's recommendations. On review, the Court will require less substantial evidence when the agency and the administrative law judge ("ALJ"), or in other words the first level of review, have reached the same conclusion. See NLRB v. Stor-Rite MetalProducts, Inc., 856 F.2d 957, 964 (7th Cir. 1988) (court found that where Board and ALJ came to different conclusions, greater substantial evidence would be needed than would be required if the Board and the ALJ had reached the same conclusion). Thus, because it appears that the DOH has provided more than a scintilla of evidence that a reasonable mind might accept as adequate to support its decision, this Court affirms the DOH's approval of Bayside's CON application. See Rhode Island Temps,Inc. v. Dep't of Labor Training, 749 A.2d 1121, 1125 (R.I. 2000).
 Conclusion
A Superior Court reviewing an agency decision on appeal may reverse or remand only when substantial rights of the appellant have been prejudiced by an agency decision that is tainted by one of the six enumerated factors articulated in § 42-35-15 (g). In determining whether such an error occurred, considerable deference is given to the agency's findings of fact as well as the agency's interpretation of its own regulations. Here, this Court finds that the agency did not err by interpreting its regulations as allowing future need as a factor of consideration in CON determinations. Likewise, the DOH did not err by finding that the conversation between Bayside and the DOH was not a prohibitive ex parte communication requiring reversal. The DOH, similarly, acted within its statutory authority when it prohibited Zimmerman's supplemental memorandum from being introduced as evidence. KCMH has not demonstrated that any of its significant rights were prejudiced, thereby precluding this Court from reversing the DOH's decision. The agency's decision was supported by substantial evidence on the record and therefore, the Court affirms the DOH's approval of Bayside's CON. Counsel shall submit the appropriate judgment for entry.
[1] In Rhode Island, before an entity may establish a new health care service or utilize new health care equipment, that party is required to apply for and obtain a CON from the DOH. The DOH is vested with the power to establish the procedures, guidelines, and minimum standards that shall be used when making the decision to either grant or deny a CON application. G.L. 1956 § 23-15-4. Upon this authority, the DOH has promulgated its "Rules and Regulations for Determination of Need for New Health Care Equipment and New Institutional Health Services" ("CON Regs.").
[2] Instead of initially examining the record from the hearing officer, the HSC may delegate the initial review to a Project Review Committee ("PRC"), who would then consider the record and make a recommendation to the full HSC. Summit NeighborhoodAssociation v. RI Dep't of Health, 2004 R.I. Super LEXIS 98, *9 n. 2 (2004).
[3] The scope of review of this appeal is nearly identical to the scope of review utilized by this Court when reviewing the final agency decision. The agency's scope of review for the Decision of Reconsideration is set forth in CON Regulation 17.5. That section provides:
 "The grounds and scope of administrative review are limited to demonstrating that the substantial rights of the appellant have been prejudiced because the state agency findings, inferences, conclusions, or decisions are:
 a) in violation of constitutional or statutory provision;
 b) in excess of the statutory authority of the agency;
 c) made upon unlawful procedure;
 d) affected by other error of law;
 e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
[4] In its original application, Bayside presented evidence indicating a need in the Kent County area for facilities to provide 3,772 colonoscopies, while its amended application indicated that there is a need for facilities to perform 4,759 colonoscopies.
[5] Further discussion of the evidence presented at these meetings will be discussed in greater detail below.
[6] It appears that Zimmerman was unable to testify to the memorandum's contents because the hearing officer had already closed the public hearings on the presentation of evidence. (See Tr. 7/20/04 at 64).
[7] The final decision maker, however, "owes deference to the recommendations of the first-tier decision-maker only if those recommendations were based on determinations of witness credibility." Johnston Ambulatory Surgical Associates, Ltd. v.Nolan, 755 A.2d 799, 807 (R.I. 2000) (citing EnvironmentalScientific Corp., 621 A.2d at 206).
[8] The Court distinguished the DOH's two-tier process from other two-tier agency review procedures because the HSC, the level of first review of a CON application, "is to act [only] as an `advisory body,' § 23-15-7, and that its role is solely `to consult and advise' the department." Id. at 806 (citing §23-17-14 (3)). As the HSC acts only in an advisory capacity, no deference is required.
[9] While the Supreme Court of Rhode Island has not yet articulated the following proposition, it is arguable that the Superior Court, on review, should give even greater deference to a final decision of the DOH that is the same conclusion reached by the HSC, as such a decision has already passed two levels of review and the DOH need not have agreed with the HSC.
[10] KCMH argues that the DOH cannot consider future need because § 23-15-4 (b) requires a CON applicant to adequately demonstrate a need "at the time and place under the circumstances proposed." According to KCMH, the "time and place proposed" prohibits consideration of future need. However, as the DOH restricted the endoscopy rooms from opening until 2006, the time and place that needed to be taken into consideration was 2006.
[11] It appears from the October 29, 2004, Decision for Reconsideration that the DOH believes that KCMH was not prejudiced by failing to receive notice of this conversation as Bayside, instead of telephoning the DOH to voice its objection to Zimmerman's memo, could simply have orally objected to the memorandum at the public meeting. In other words, while KCMH could arguably have better prepared for the objection had it been made privy to the earlier conversation between Bayside and the DOH, it had no right to prepare itself in such manner as Bayside could have waited until the meeting to orally object. Bayside, therefore, did not obtain an unfair advantage through its ex parte contact with the DOH. In its Decision for Reconsideration, the DOH wrote:
 ". . . Bayside gave notice that it would object to the Zimmerman memo and the Department advised that the issue would be addressed at the PRC-II meeting. This appears to be nothing more than somebody giving notice of an oral objection and being told that the subject matter of that objection will be taken up at the public hearing where all are present. This communication and contact does not bear a resemblance to either the letter or the spirit of ex parte contacts designed to influence the decision of fact finders to the exclusion of the participation, notice or influence of affected parties." Id. at 3.
[12] In that case, though a Superior Court case, the court held that the alleged ex parte communication did not violate §42-35-13. That section prohibits ex parte contact regarding "any issue of fact." The Court found that the "CRMC's checking whether the required zoning approval had been obtained . . . does not qualify as an issue of fact but merely as a matter of public record." Id. at *11. In the matter here, however, the prohibited ex parte contact is governed further by CON Reg. 10.3, which appears to prohibit a broader scope of ex parte communication, as it does not contain language restricting only communication regarding issues of fact. However, this Court must be cognizant that an agency is given great deference in interpreting its own regulation. It is not clearly erroneous to conclude that the DOH interprets CON Reg. 10.3 to prohibit only certain types of ex parte contact, especially considering that the Administrative Procedures Act, specifically § 42-35-13, prohibits only specific types of ex parte communication.
[13] As the Supreme Court of Indiana has stated, ex parte communication regarding scheduling "raises no inference of impropriety." Sylvester v. State, 698 N.E.2d 1126, 1129 n. 2 (Ind. 1998).
[14] This Court should be mindful that while it cannot substitute its judgment on questions of fact for that of the agency, the agency here never found that there were 48 endoscopy rooms. Therefore, this Court is not imposing its judgment on a finding of fact of that of the agency. The DOH stated in its Decision for Reconsideration that "even if the actual number of endoscopy rooms is 48, this difference from 47 to 48 is inadequate to justify reconsideration in this case . . . (emphasis added)." (Decision for Reconsideration at 4). By using the phrase "even if," the DOH did not clearly state that there were 48 endoscopy rooms available in Rhode Island. As it is unclear whether the 47 reported rooms in 2004 includes the second room at WI, and because this Court may not substitute its judgment on questions of fact, the Court cannot find that the agency's decision was clearly erroneous in light of the substantial evidence on the record.
[15] In his original report, Zimmerman projected that there would be a need for four rooms, but that number was later amended. In amended Table 3, Zimmerman projects that there will be a need for 186 operating rooms and endoscopy rooms in 2006. The table also projects that in 2006, Rhode Island will have 183 total operating and endoscopy rooms.
[16] "In short, the CON Statute anticipates that circumstances may exist in the future which require intelligent planning and the grant of CON applications that would be appropriate to meet a currently projected need which would be operational at a future date." (Decision for Reconsideration at 5).
[17] For example, § 42-35-10 requires that "irrelevant, immaterial, or duly repetitious evidence shall be excluded."
[18] The DOH had before it testimony that some endoscopies are presently being done is operating rooms. (Tr. 7/20/04 at 35). Zimmerman testified that if more endoscopy rooms were made available, space would be freed up in the operating rooms to perform in-patient and out-patient surgeries, space which has been projected to be needed in the future. (Id. at 36). Pursuant to CON regulation 9.11 (x), the DOH can take into consideration whatever factors it deems relevant when determining whether to approve a CON application. Apparently, the DOH found the number of operating rooms relevant, as the addition of endoscopy rooms would help reduce the projected need for operating rooms.
[19] KCMH did, however, attack this assertion by stating that with its new block scheduling procedure, there is no longer such a wait for endoscopy procedures.